# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 20, 2007

Charles R. Fulbruge III
Clerk

No. 06-31119

ANN LYNNE MIRANDONA ROSE

Plaintiff-Appellant

v.

TENNESSEE GAS PIPELINE COMPANY, formerly known as Tennessee Gas Transmission Company

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before WIENER, DEMOSS, and PRADO, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant Ann Lynne Mirandona Rose, as joint owner of an undivided interest in property across which Defendant-Appellee Tennessee Gas Pipeline Company ("TGP") holds a pipeline "easement" or "right of way" obtained in an expropriation proceeding against her predecessor in title, appeals from the district court's dismissal of her claims against TGP as time barred by prescription. Concluding that the district court erred by failing to ground its analysis in the fundamental recognition that the expropriation judgment created

a servitude over the subject property, we reverse the district court's dismissal[1] and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEEDINGS

Two interstate gas pipelines owned and operated by TGP, formerly known as Tennessee Gas Transmission Company, are located in parallel canals or "flotation ditches" that intersect Rose's property near Breton Sound in coastal Louisiana. TGP lawfully obtained authority to build the two pipelines across Rose's property at different times by instigating the judicial procedure known in Louisiana as "expropriation," which is "practically synonymous" with eminent domain.[2]

TGP dredged the first canal and laid the first pipeline in it in 1958, after obtaining a favorable judgment in an expropriation proceeding in Louisiana state court and subsequently settling with Rose's predecessor in interest, Violet Trapping Company ("Violet"), while an appeal was being pursued. Under the settlement, Violet granted TGP the right to dredge a canal approximately forty feet in width and to lay a pipeline within those bounds.

In 1964, following unsuccessful negotiations, TGP prevailed in a second expropriation proceeding against Violet, in which the court granted TGP the right to dredge a second canal and lay a pipeline therein. The judgment specified that TGP could dredge a fifty-foot canal parallel to and 100 feet east of the 1958 canal, and it awarded Violet compensation for the taking.[3] Violet

---

[1] It is not clear to us whether the dismissal was for failure to state a claim (Rule 12(b)(6)) or summary judgment (Rule 56).

[2] Tenn. Gas Transmission Co. v. Violet Trapping Co., 200 So. 2d 428, 433 (La. App. 4 Cir. 1967) (explaining that expropriation is "the right to take private property for public purpose and utility upon the payment first of just compensation").

[3] The relevant language of the expropriation judgment reads:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that subject to the limitation and reservation hereinafter made, plaintiff [Tennessee Gas] shall

2

appealed that judgment, but the Louisiana Fourth Circuit Court of Appeal affirmed.[4]

Although the Louisiana appellate court upheld the judgment, it noted in dicta that Violet retained the right to seek damages for future erosion that might result from any wrongful act by TGP. The court stated:

> We have not failed to consider evidence indicating that the first canal is now considerably wider at certain points than when dredged in 1958. Nor have we overlooked the testimony . . . that the erosion between the two canals might eventually destroy the middle land area, resulting in one wide canal. Whatever complaint [Violet] might have that the widening of the first canal has resulted from fault of the plaintiff, does not address itself to the court in this expropriation proceeding. If in the future it should develop that defendant's property is damaged by some fault of the plaintiff . . . the defendant may then have recourse to the courts in a proper proceeding according to law.[5]

Alleging, inter alia, that TGP's wrongful failure to maintain the canals allowed the canals to increase in width and erode her property, Rose filed a Class Action Petition for Damages against TGP, El Paso Energy Corporation ("El Paso"), and Popich Marine Construction ("Popich") on June 17, 2005, in

---

have and enjoy the right of way and easement . . . in, under, upon, across and through the property herein above described . . . for the purpose of laying, constructing, maintaining, operating, altering, replacing or removing one pipe line with necessary appurtenances, for the transmission of natural gas, including . . . the right to dredge or open a flotation ditch approximately 50' in width with a plug at the North end thereof, on the right of way and easement in which to lay said pipe line, but plaintiff's use and occupancy of said right of way and easement and the right of ingress and egress shall be subject to the following limitations:

A.  Plaintiff shall have the right to place only one pipe line under the right of way and easement.
B.  The right of way of ingress and egress shall be limited to the easement herein granted.

[4] See Violet, 200 So. 2d at 433-34.

[5] Id. at 436.

3

Louisiana state court. Rose sought damages and the restoration of her land based on (1) the defendants' alleged negligence in maintaining the canals within their proper boundaries, (2) their breach of the duty owed towards her servient estate, and (3) trespass.

After the defendants removed the case to the district court, Rose voluntarily dismissed El Paso as a defendant, and the court denied Rose's Motion for Class Certification. The remaining defendants, TGP and Popich, filed a "Motion to Dismiss, and Alternatively, For Summary Judgment" based on prescription. Before the district court ruled on that motion, Rose voluntarily dismissed Popich from the suit, leaving only TGP.

Following a hearing, the district court granted TGP's motion and dismissed the suit without written reasons. In dismissing the action, the district judge stated: "I do find that there was not a duty to maintain by the defendant in this case. As a result, there is no continuing tort at issue, and this case has prescribed." Rose timely filed a notice of appeal.

## II. ANALYSIS

A.   Standard of Review

We review the dismissal of Rose's claims de novo, applying the same standard as the district court.[6]

B.   Duty to Maintain

Rose argues that TGP had a duty to maintain the canal it constructed pursuant to the 1964 expropriation judgment, and that TGP's failure to do so has caused the canal to grow wider, diminishing her property by erosion. Rose further argues that TGP's duty is continuing, and, consequently, the relevant prescriptive period has been tolled. The district court rejected these arguments

---

[6] Copeland v. Wasserstein, Perella & Co., Inc., 278 F.3d 472, 477 (5th Cir. 2002) (noting that a district court's grants of both a motion to dismiss and a motion for summary judgment are reviewed de novo).

when it dismissed Rose's claims; however, in doing so, the court failed to account for the fact that the 1964 expropriation judgment created a servitude in favor of TGP, thereby implicating Louisiana's suppletive law on servitudes and potentially imposing various duties on TGP as the holder of a dominant estate.

The 1964 expropriation judgment granted TGP a "right of way and easement" over Rose's property. TGP contends that, because the "right of way and easement" was created in an expropriation proceeding, rather than by means of a conventional agreement, no servitude exists and Louisiana's suppletive law on servitudes is not implicated. Having reviewed the applicable Louisiana law and jurisprudence, we conclude that the 1964 expropriation judgment did, in fact, create a servitude.

When TGP proceeded to expropriate the "right of way and easement" in question, it did so under the authority of Louisiana Revised Statutes Title 19.[7] Section 19:1 defines the "property" that is subject to expropriation as "immovable property, including servitudes . . . ."[8] As evident by Title 19, as well as by a substantial body of Louisiana jurisprudence, it is well established in Louisiana that one of the ways that a servitude may be created is by expropriation of property for public utility.[9]

To hold for TGP that the 1964 expropriation judgment did not create a servitude, we would have to conclude that in ordering the "right of way and easement," the state court was granting something other than a servitude in the immovable property at issue. TGP argues that such is the case, noting that the expropriation judgment identified the interest created as a "right of way and

---

[7] See LA. REV. STAT. ANN. § 19:1 et al.

[8] LA. REV. STAT. ANN. § 19:1.

[9] See A.N. YIANNOPOULOS, 4 LA. CIV. LAW TREATISE § 147, at 411 (3d ed. 2004). See also Acadian Gas Pipeline Sys. v. Bourgeois, 890 So. 2d 634 (La. App. 5 Cir. 2004); Tusson v. Hero Land Co., 446 So. 2d 346 (La. App. 4 Cir. 1984).

easement," rather than a "servitude." It is widely recognized, however, that myriad common law terms have seeped interstitially into Louisiana judicial opinions and even into some specialized statutes,[10] "easement" and "right of way" being just two. This phenomenon does not, however, work any substantive change in the law; rather, "easement" and "right of way" have simply become interchangeable synonyms for "servitude." Moreover, Louisiana law has long recognized that the grant of a "right of way" gives rise to a predial servitude,[11] and it is "uniformly accepted in the law of Louisiana that the common law word 'easement' is the same as the Louisiana 'servitude.'"[12]

We refuse to construe the court's use of the phrase "right of way and easement" in the 1964 expropriation judgment here at issue as a conscious effort to create some interest other than a servitude. We are persuaded that such word usage is nothing more than another example of the verbal alluvium from our sister states that has become engrafted onto our legal lexicon. Despite the fact that the term "easement" may not be found anywhere in the Civil Code, it continues to be used by courts and practitioners alike when what they really mean is servitude. And, we are convinced that its inclusion in TGP's 1964 judgment is just another example of such imprecision.

Our conclusion that the 1964 expropriation judgment created a servitude is bolstered by the fact that the interest granted to TGP meets the definition of

---

[10] See, e.g., LA. REV. STAT. ANN. § 30:78; Quibodeaux v. Andrus, 886 So. 2d 1258, 1261 (La. App. 3 Cir. 2004); Meynard v. Pickett Indus., Inc., 896 So. 2d 126, 127 (La. App. 3 Cir. 2004); Ark. La. Gas Co. v. La. Dep't of Highways, 104 So. 2d 204, 207 (La. App. 2 Cir. 1958).

[11] Quibodeaux, 886 So. 2d at 1261 (citing El Paso Field Serv., Inc. v. Minvielle, 867 So. 2d 120, 124 (La. App. 3 Cir. 2004), and Bidstrup v. Brignac, 631 So. 2d 637, 642 (La. App. 3 Cir. 1994)); see also Rock Island, A. & L.R. Co. v. Gournay, 17 So. 2d 8 (La. 1944) (noting that the jurisprudence is well settled that conveyance of a right of way is generally regarded as the granting of a servitude, rather than a transfer of title).

[12] Quibodeaux, 886 So. 2d at 1261 (citing Ark. La. Gas, 104 So. 2d at 207, 209).

a servitude.[13]  Louisiana Civil Code article 646 defines a predial servitude as a "charge on a servient estate for the benefit of a dominant estate," and notes that "[t]he two estates must belong to different owners."[14]  Here, Rose is the servient estate holder, as her property is burdened by the servitude, and TGP is the dominant estate holder, as it "owns" the right to lay and use the pipeline and enjoy the benefits from the burden imposed on the Rose property.[15]

Inasmuch as (1) servitudes may be created by expropriation, (2) the 1964 judgment used common law terminology synonymous with servitudes, and (3) the interest granted to TGP meets the legal definition of a predial servitude, we are persuaded that the 1964 expropriation judgment created a servitude, thereby implicating Louisiana's suppletive law on servitudes.  Just as when silence in the writing of the parties opens a conventional obligation to provisions supplied by law, anything not expressly covered by the provisions of a judgment that creates a servitude will be supplied from the applicable law.

This determination is further supported by considerations of practicality as well.  TGP only resorted to expropriation when it was unable to negotiate a

---

[13] Arguably, there is some question as to whether the instant servitude should be classified as a predial servitude or a personal servitude of right of use.  Louisiana Civil Code article 639 states that "[t]he personal servitude of right of use confers in favor of a person a specified use of an estate less than full enjoyment."  LA. CIV. CODE ANN. art. 639.  Even though rights of way similar to that granted to TGP are frequently characterized as predial servitudes, see, e.g., Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co., 290 F.3d 303 (5th Cir. 2002), perhaps the interest in question might be better classified as a personal servitude because it confers a benefit in favor of a juridical person, TGP, rather than an immovable. Either way, though, the interest granted to TGP meets the definition of a servitude under Louisiana law.  And, under the circumstances, any distinction is immaterial.  The fact that a servitude was created by the 1964 expropriation judgment implicates Louisiana's suppletive law on servitudes, and under Louisiana Civil Code article 645, "[a] right of use is regulated by application of the rules governing usufruct and predial servitudes to the extent that their application is compatible with the rules governing a right of use servitude."  LA. CIV. CODE ANN. art. 645.

[14] LA. CIV. CODE ANN. art. 646.

[15] El Paso Field Serv., Inc. v. Minvielle, 867 So. 2d 120, 124-25 (La. App. 3 Cir. 2004) (classifying the owner of an underground gas pipeline as the dominant estate holder).

conventional servitude with Violet, Rose's predecessor in interest. Were we to conclude that the expropriation judgment granted TGP some innominate interest other than a servitude — one that was not amenable to Louisiana's suppletive law on servitudes — then parties like TGP would have no incentive to negotiate servitudes and likely would, instead, opt for expropriation proceedings that might provide them with the benefits they want without imposing the concomitant correlative responsibilities. We are convinced that the court that ordered the so-called "right of way and easement" to TGP had no intention of granting such a distinct interest; instead, it merely purported to grant the same interest, viz., a servitude, that the parties had been unable to agree on among themselves.

Having determined that the 1964 expropriation judgment created a servitude and in so doing subjected it to all applicable provisions of Louisiana law, we turn to the rights and responsibilities that accompany such an immovable. The Civil Code provides a whole host of suppletive rules that govern the relationship of parties to a servitude to the extent that they (or, in this case, the court) do not provide otherwise. Louisiana Civil Code article 697 states in pertinent part that "[t]he use and extent of such servitudes are regulated by the title by which they are created, and, in the absence of such regulation, by the following rules."[16] Among these suppletive rules, "[i]t is well settled in Louisiana that, under the applicable Civil Code provisions, one holding a servitude on another's land is bound to use that servitude in such a manner as to not unreasonably injure the rights of the owner of the servient estate. Thus, if the owner of the servitude uses it in a negligent, unauthorized or unreasonable manner, the owner of the servient estate may sue for damages."[17] Stated

---

[16] LA. CIV. CODE ANN. art. 697 (emphasis added).

[17] Stephens v. Int'l Paper Co., 542 So. 2d 35, 39 (La. App. 2 Cir. 1989) (citing LA. CIV. CODE ANN. arts. 743, 745). Louisiana Civil Code article 743 provides in relevant part that

differently, the dominant estate owner "must not 'aggravate' the condition of the servient estate."[18] Moreover, the duty not to aggravate the servient estate is a continuing one.[19]

It is apparent that these suppletive rules imposed duties upon TGP, as the holder of a dominant estate, that are potentially implicated by Rose's claims. We make no determination whether the judgment of expropriation disposed of any applicable provisions or whether the parties did or did not contract out of Louisiana's suppletive law on servitudes, specifically, whether TGP was under a continuing duty to prevent the widening of the canals in which its active pipelines lay so as to prevent the erosion of Rose's property, even if the suppletive rules are applicable. As we noted in Columbia Gulf Transmission when we tackled a similar issue, whether the suppletive law of Louisiana might impose such a duty remains to be resolved, as does the question whether such a duty might in turn render the failure to maintain the canal banks a continuing tort.[20]

## III. CONCLUSION

The district court failed to commence and conduct its analysis in the proper legal framework when it failed to recognize that the 1964 expropriation judgment created a servitude, thereby implicating Louisiana's suppletive law on

---

"[r]ights that are necessary for the use of a servitude . . . are to be exercised in a way least inconvenient for the servient estate." LA. CIV. CODE ANN. art. 743. Louisiana Civil Code article 745 imposes upon the dominant estate holder the "obligation of causing the least possible damage" when entering upon the servient estate and depositing materials needed to construct or repair the works required for the use or preservation of the servitude. LA. CIV. CODE ANN. art. 745.

[18] Columbia Gulf Transmission, 290 F.3d at 316 (citing LA. CIV. CODE ANN. arts. 743, 745). See also A.N. YIANNOPOULOS, 4 LA. CIV. LAW TREATISE § 156, at 431 (3d ed. 2004) (citing Dupree v. Oil, Gas & Other Minerals, 731 So. 2d 1067 (La. App. 2 Cir. 1999)).

[19] Columbia Gulf Transmission, 290 F.3d at 316.

[20] Id. at 325-26.

servitudes. As such, the court's dismissal of Rose's claims was improper. On remand, the district court must examine the judgment that created the servitude in question, as well as the history of the parties and their relationship to each other. After doing so, the court can determine the rights and duties that were created between TGP and Rose and then decide whether TGP had a duty, as the holder of a dominant estate, to conduct preventative maintenance with respect to, inter alia, the width of the canal. The district court should also ascertain which, if any, of the duties that it determines to have flowed from the creation of the servitude remain enforceable. We remand this action for further proceedings consistent with this opinion.

REVERSED and REMANDED.