**Charles William MASSIE, III,**
**Plaintiff-Appellee,**

v.

**INEXCO OIL COMPANY,**
**Defendant-Appellant.**

No. 85–4724.

United States Court of Appeals,
Fifth Circuit.

Aug. 27, 1986.

Rehearing Denied Sept. 29, 1986.

John M. McCollam, Gordon, Arata, McCollam, Stuart & Duplantis, Philip N. Asprodites, New Orleans, La., for defendant-appellant.

Carl W. Cleveland, Bruce S. Kingsdorf, New Orleans, La., for plaintiff-appellee.

Before REAVLEY, RANDALL and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Defendant appeals a judgment ordering the partial cancellation of its mineral lease.

We disagree with the district court's interpretation of the lease and reverse.

## I.

The genesis of this litigation comes from a mineral lease granted to Inexco Oil Company by Charles William Massie. The lease, dated October 14, 1977, contains a typical habendum clause which grants Inexco a primary term of three years, but allows extension of the lease's life beyond the primary term by production of minerals or by "any other manner" provided for in the lease.[1] One such "other manner" is the right to make as many attempts to discover minerals "after the primary term and after beginning operations for the drilling of a well" as Inexco pleases so long as the operations are conducted in good faith and no more than ninety days expire between stopping work on one well and commencing work on another (continuous operations clause).[2]

The parties agree that the lease's primary term ended on October 13, 1980. Before that date, Inexco drilled four wells on the leased property. Production was established only by the third well at a depth of approximately 13,448 feet. The fourth well was spudded on October 3, 1980, but was lost shortly after the primary term ended. Within ninety days of this loss, Inexco spudded a fifth well on Massie's land but ceased drilling on April 29, 1981; no other wells were drilled on the Massie lease. But on July 25, 1980, Inexco began drilling a well on an adjacent tract covered by a separate mineral lease. This well was completed as a producer on November 6, 1980, at a depth of approximately 14,298 feet. On April 23, 1981, before drilling operations on the Massie lease had ceased, a unit was formed (effective March 10, 1981) that included this well and a substantial portion of the land covered by the Massie lease.

After formation of the unit, Massie filed this diversity suit seeking cancellation of the lease. Massie argues that cancellation is required by paragraph XXXIII of the lease which provides:

> Notwithstanding anything to the contrary herein contained, any acreage which may be held by Lessee, its successors or assigns, at the end of the primary term by the production of oil, gas or other hydrocarbon minerals under the terms and conditions provided in this lease shall be held only to a depth of one hundred (100) feet below the stratigraphic equivalent of the base of the deepest horizon from which Lessee, its successors or assigns, shall have established production of oil, gas or other hydrocarbon minerals in paying quantities during the primary term. Lessor reserves all oil, gas and other hydrocarbon minerals below the aforesaid depth after the end of the primary term of this lease, and this lease shall terminate as to all lower depths.

Placing emphasis on the second sentence, Massie contends that paragraph XXXIII is

---

1. Paragraph V provides:

    Subject to the other provisions herein contained, this lease shall remain in force for a term of three (3) years from the effective date hereof, hereinafter called "Primary Term," and for so long thereafter as (a) oil, gas or other hydrocarbon minerals are produced from the leased premises in paying quantities, or (b) this lease is maintained in force in any other manner hereinafter provided.

2. Paragraph XII provides:

    After the primary term and after beginning operations for the drilling of a well hereunder, Lessee shall have the right to make as many attempts to discover oil, gas and/or other liquid or gaseous hydrocarbon minerals as Lessee pleases; provided, however, that except as otherwise provided herein, such attempts shall be successive in the sense that not more than ninety (90) days shall lapse from the date of cessation of work on one well and the commencement of drilling operations (which are herein defined to mean beginning operations and the prosecution thereof with due diligence and spudding in within ninety (90) days) on another, or of reworking operations on the same well, and provided, further, that such operations shall be carried out diligently and in good faith in an effort to develop the premises as herein contemplated. The right of Lessee to commence operations for the reworking of a well or wells within ninety (90) days after cessation of production shall also be applicable to a producing well or wells which has or have ceased to produce, as defined herein.

an absolute depth termination clause. Massie argues that the continuous operations clause cannot be used to hold the lease after the primary term, but can only be used to drill to depths which were earned by production established at the end of the primary term. Under his interpretation, when the primary term ended on October 13, 1980, the lease terminated as to all depths below 13,548 feet, the depth at which Inexco established production before October 13, 1980, plus one hundred feet; therefore, Inexco can drill to any depth so long as it is above 13,548 feet.

Inexco complains that Massie's interpretation nullifies its rights under the continuous operations clause to hold the lease after the primary term by continuous operations. Emphasizing the first sentence of paragraph XXXIII, Inexco concludes that this paragraph applies only when acreage is held beyond the primary term *solely* by production. Inexco asserts that the second sentence, upon which Massie relies, refers back to and is limited by the first sentence. As Inexco interprets paragraph XXXIII, the termination clause was not triggered until April 29, 1981, when it ceased drilling the fifth well on the leased property; its continuous operations served to hold the entire lease under the continuous operations clause until that date. Inexco argues that once its operations ceased on April 29, 1981, the Massie lease was held solely by production and paragraph XXXIII terminated its rights to all horizons 100 feet below the deepest production established on that date or 14,398 feet.

The district court, in a careful opinion, agreed with Massie's interpretation of the lease with one significant modification. The court found that paragraph XXXIII operated as an absolute depth cutoff *only* when production was established before the end of the primary term; the court concluded that if production were established during the primary term, the continuous operations clause could be used to hold the lease after the primary term as to depths above the strata at which production was established, but could not be used to hold the lease below that level. But, if production is not established at the conclusion of the primary term, the district court concluded that paragraph XXXIII is inapplicable and all horizons can be maintained by continuous operations. Because Inexco did establish production before October 13, 1980, the court held that paragraph XXXIII terminated Inexco's rights in the lease to all depths below 13,548 feet. 614 F.Supp. 880. Inexco now brings this appeal to restore rights under the lease to minerals between 13,548 and 14,398 feet.

## II.

The interpretation of a contract is a question of law, *Chevron U.S.A., Inc. v. Belco Petroleum Corp.*, 755 F.2d 1151 (5th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 140, 88 L.Ed.2d 116 (1985), and we conduct a de novo review of the district court's interpretation of the Massie lease. In undertaking this review, we follow the substantive law of Louisiana.

Under Louisiana law, codal provisions applicable to ordinary leases are applicable to mineral leases. La.Rev.Stat. Ann. § 31:2 (West 1975); *Bouterie v. Kleinpeter*, 258 La. 605, 247 So.2d 548 (La.1971). The articles on contract construction require that we determine the intent of the parties as expressed in the lease without rendering any part of the instrument meaningless. La.Civ. Code Arts. 2045, 2050 (West Supp. 1986). Where the words are "clear, explicit, and lead to no absurd consequences, the meaning and intent of the parties must be sought within the four corners of the instrument and cannot be explained or contradicted by parole evidence." *Texaco, Inc. v. Newton and Rosa Smith Charitable Trust*, 471 So.2d 877, 881 (La.App. 2d Cir.1985). After reviewing the Massie lease, we find it clear and unambiguous, but conclude that the district court erroneously rejected Inexco's interpretation of the lease.

The essential difference between the parties' interpretations of paragraph XXXIII is that Inexco places emphasis on the first sentence while Massie places em-

phasis on the second. The first sentence, when read alone, relates to holding the lease beyond the primary term *by production*. It does not relate to other means by which the lessee may hold the lease beyond the primary term. The second sentence, read alone, is an absolute depth termination clause. We agree with Inexco that the two sentences should be read together rather than in isolation from each other, and, when read in this manner, the first sentence restricts the scope of the second sentence. We read the two sentences together not only because the second sentence immediately follows the first in the instrument but also because the second sentence provides that Massie reserves all minerals "below the *aforesaid* depth." Reference must be made to the first sentence to determine the "aforesaid depth." There, this depth limitation is given as 100 feet below the deepest horizon at which production is established before the end of the primary term, but it is restricted to acreage held *"by the production of"* minerals at the end of the primary term. This restrictive language leads us to reject Massie's contention that paragraph XXXIII operates as an *absolute* depth termination clause.

The remaining terms of the contract lend support to this interpretation; Inexco's construction harmoniously prevents any of the remaining clauses from being rendered meaningless. Paragraph I provides that Massie grants Inexco a mineral lease for the primary term and for so long as minerals are produced *or* operations are conducted "as hereinafter provided".[3] The habendum clause allows Inexco to maintain the lease beyond the primary term by production or "any other manner hereinafter provided."[4] Paragraph XII allows Inexco to drill as many wells as it pleases "after the primary term."[5] Given these clauses, we conclude that paragraph XXXIII cannot be construed as an absolute depth termination clause preventing Inexco from holding the lease beyond the primary term by continuous operations. The district court's determination that the continuous operations clause applies only if no production is established before the conclusion of the primary term has the anomalous effect of granting Inexco greater rights if it fails to establish production before the primary term ends.

Massie contends that by its phrase "notwithstanding anything to the contrary herein contained," paragraph XXXIII reflects an intent to give that paragraph precedence over the paragraphs that give Inexco the right to hold the lease by continuous operations. But paragraph XXXIII does not include the kind of clear, unmistakable language that is necessary to negate the right to hold the lease by continuous operations clearly granted to Inexco by the clauses discussed above. *See Dawes v. Hale,* 421 So.2d 1208 (La.App. 2d Cir.1982). Here, paragraph XXXIII was not triggered on October 13, 1980, because on that date Inexco was not holding the lease solely by production; it held the lease on that date

---

**3.** Paragraph I provides:

Lessor, for the price and consideration of ONE HUNDRED AND NO/100THS ($100) DOLLARS and other valuable consideration, of the royalties provided herein, and the obligations taken on by Lessee set forth herein, *does hereby LEASE and LET unto Lessee, its successors and assigns, for the term stated below, and as long thereafter as oil, gas or other hydrocarbon minerals are being produced or operations are being conducted by Lessee as hereinafter provided,* the hereinafter described property, for the exclusive purpose of exploring, drilling, and mining for and for producing therefrom oil, gas and other liquid or gaseous hydrocarbon minerals, together with a right-of-way for, and the right to build tanks, erect structures, build roads, erect telephone lines, and to lay pipelines to convey water, oil, gas, or other hydrocarbon minerals, and steam, and the right to have sufficient water from the premises to drill and operate any wells which the said Lessee may bore thereon, and the right to remove its property from said premises, as provided below; the rights so leased and let (except the right to remove property as provided below) to remain in force only so long as the Lessee shall have fulfilled its obligation to Lessor hereunder (emphasis added).

**4.** *See, supra,* note 1.

**5.** *See, supra,* note 2.

by both production and drilling operations. Accordingly, we reverse the judgment of the district court cancelling the lease below 13,548 feet and remand for entry of judgment in accordance with this opinion.

REVERSED and REMANDED.