Lydia Harrison **RYAN, et al.,**
**Plaintiffs–Appellees,**
**Cross–Appellants,**

v.

**SOUTHERN NATURAL GAS COMPA-NY, Defendant–Appellant,**
**Cross–Appellee.**

No. 88–3282.

United States Court of Appeals,
Fifth Circuit.

Aug. 8, 1989.

Rehearing and Rehearing En Banc
Denied Sept. 5, 1989.

John M. Wilson, James A. Brown, and Robert L. Theriot, New Orleans, La., for defendant-appellant, cross-appellee.

Gary A. Lee, New Orleans, La., for plaintiffs-appellees, cross-appellants.

Before KING, GARWOOD and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Southern Natural Gas Company (SNG), which was granted a servitude to property owned by appellees' ancestors, challenges the district court's judgment against it for the loss and deterioration of approximately 330 acres of marshland. The district court found that the marsh damage was due to appellant's failure to dam a pipeline canal it constructed on plaintiffs' property. Because the servitude agreement absolved SNG from the obligation to dam the canal, appellant owed no duty to appellees to do so. We therefore reverse and render the judgment entered by the district court.

### I.

In 1956, SNG obtained a servitude agreement from several ancestors of the plaintiffs/appellees (collectively the "Harrisons"). Pursuant to the written agreement, SNG constructed a pipeline canal on two portions of the Harrisons' land, which we refer to as the southern strip or strip I and the northern strip or strip II. The agreement required SNG to backfill the pipeline canal in the northern strip and allowed the canal in the southern strip to be left open. The agreement specifically prohibited SNG from backfilling the southern strip.

Consistent with its contractual obligations, when SNG built the pipeline canal in 1956, it did not backfill or dam that part of the canal running through the southern strip. In 1978, the Harrisons' attorney wrote to SNG complaining that erosion had taken place along the spoil banks of the canal in the southern strip, causing it to widen beyond the right-of-way. The Harrisons also complained that failure to dam the southern part of the canal was allowing the tide to flow into and out of the canal and marsh, resulting in saltwater damage to a large area of the marsh beyond the right-of-way. The Harrisons requested that SNG dam or plug the canal. SNG refused.

In 1986, the Harrisons filed this action to recover for (1) land lost due to erosion and widening of the canal and, (2) "extended marsh loss" allegedly caused by the change in the ecological makeup of the marshlands because of increased tidal flow in and out of the canal. The Harrisons sought damages under theories of negligence, strict liability and breach of the servitude agreement. The district court found that the Harrisons' contract claim had prescribed,[1] but allowed the Harrisons to recover from SNG under a negligence theory; the court found that SNG's negligent failure to dam the canal caused the canal banks and the marshland top soil to erode. The court awarded the Harrisons damages both for the loss of thirty-nine acres of land due to the widening of the canal and for the cost of stabilizing the surrounding marshland to prevent further deterioration.

SNG appeals the adverse judgment against it; the Harrisons, by way of cross-appeal, contend that the trial court erred in

---

1. The Harrisons do not challenge the district court's finding that prescription prevents them from recovering on their breach of contract claim. Thus, this issue is not before us.

finding that SNG was not strictly liable for the loss.

## II.

The initial issue confronting us is whether the servitude agreement between SNG and the Harrisons absolved SNG of any duty to dam the canal.

 When a servitude is established by contract, the extent and mode of using the servitude is regulated by the contract. *See Ogden v. Bankston*, 398 So.2d 1037, 1040–41 (La.1981). A written agreement is the law between the parties and must be interpreted and enforced according to its terms. La.Civ.Code art. 1983; *Massie v. Inexco Oil Co.*, 798 F.2d 777, 779 (5th Cir. 1986) (applying Louisiana law). The duty of SNG to plug or backfill the pipeline canal in question was defined by its contract with the Harrisons:

> [T]he Grantee [SNG] is given the right to use the right of way granted above for the purpose of constructing a canal or ditch, ... and which canal or ditch may, at [SNG's] option, be left open insofar as [the southern strip] is concerned.... The canal or ditch constructed by the Grantee will not be backfilled upon completion of construction at any other time by [SNG]....

The plain words of the contract gave SNG the option to leave the canal "open." This obviously gave SNG the right to refrain from damming the canal. The Harrisons argue that irrespective of the language of the contract, article 745 of the Louisiana Civil Code [2] establishes a general duty by the servitude owner to avoid unreasonable damage. We disagree. Any duty imposed on the servitude owner by article 745 is subject to the provisions of the written servitude agreement between the parties.

Article 697, Louisiana Civil Code, makes it clear that the duty imposed on the servitude owner by article 745 to avoid unreasonable damage to the dominant estate is subject to the provisions of the instrument creating the servitude: "The use and extent of such servitudes are regulated by the title by which they are created, and, in the absence of such regulation, by the following rules." Also, article 774 [3] (the predecessor article to article 745), which was in effect in 1956 when the servitude was created, explicitly recognized the ability of the parties to contractually alter the duty owed by the servitude owner. We conclude therefore that any duty SNG had under article 745 did not include the duty to dam the canal because SNG was relieved of that specific duty under the servitude agreement.

 We reach a similar conclusion with respect to the Harrisons' claim under Louisiana Civil Code article 667,[4] which imposes a strict duty on proprietors to avoid work on their property that may cause damage to their neighbors. Assuming without deciding that the relief afforded by article 667 is available to the Harrisons, as the owners of the dominant estate, against SNG, the servitude owner, we know of no

**2.** Article 745 provides:

The owner of the dominant estate has the right to enter with his workmen and equipment into the part of the servient estate that is needed for the construction or repair of works required for the use and preservation of the servitude. He may deposit materials to be used for the works and the debris that may result, under the obligation of causing the least possible damage and of removing them as soon as possible.

**3.** La.Civ.Code art. 774 (1870) provided:

The owner of the estate, to which the servitude is due, has the right to go on the estate which owes the servitude with his workmen, in the place where it is necessary to construct or repair the works necessary for the exercise of the servitude, to deposit there the materials necessary for those works and the rubbish made thereby, under the obligation of causing the least possible damage and of removing them as soon as possible.

Nevertheless, if in the act establishing the servitude, it is said that the owner to whom it has been granted cannot construct works in order to exercise it, or can only construct them in a certain manner, this agreement must be observed.

**4.** Louisiana Civil Code article 667 provides:

Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.

reason the parties cannot contractually modify the duty SNG would owe the Harrisons under that article. Article 729 of the Louisiana Civil Code provides: "Legal and natural servitudes may be altered by agreement of the parties if the public interest is not affected adversely." Thus article 667 cannot be the source of any duty upon SNG to dam the canal when the parties dispensed with that duty in their agreement. *See Butler v. Baber,* 529 So.2d 374, 382 (La.1988) (Dennis, J. concurring).

█ The Harrisons call our attention to an SNG memo, written around the time the servitude agreement was executed, in which the SNG representative stated, "I was greatly surprised that we were able to talk Captain Harrison out of making us construct several dams or plugs, which I believe would have cost us at least $25,-000." The Harrisons argue that this memo tags SNG with culpability in declining to place dams in the canal when it fully expected it would be required to do so. But in our view, this memo is more detrimental than helpful to the Harrisons' position. It demonstrates that the contracting parties turned their attention to whether SNG would be required to construct dams in the canal and SNG was successful in negotiating an agreement that relieved it of this responsibility.

Our conclusion that the servitude agreement relieved SNG of any duty to dam the canal resolves this case and makes it unnecessary for us to discuss the remaining issues. Accordingly, the judgment of the district court is reversed and the case is remanded for entry of a take-nothing judgment in favor of SNG.

REVERSED and REMANDED.