| | | |
|---|---|---|
| **MORGAN CITY LAND AND FUR COMPANY, L.L.C.** | * | **NO. 2020-CA-0676** |
| | * | |
| **VERSUS** | | **COURT OF APPEAL** |
| | * | |
| **TENNESSEE GAS PIPELINE CO., L.L.C., ET AL.** | * | **FOURTH CIRCUIT** |
| | | **STATE OF LOUISIANA** |

* * * * * * *

**CONSOLIDATED WITH:**

**MORGAN CITY LAND AND FUR COMPANY, L.L.C.**

**VERSUS**

**TENNESSEE GAS PIPELINE CO., L.L.C., ET AL.**

**CONSOLIDATED WITH:**

**NO. 2020-C-0575**

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES
NO. 64-754, DIVISION "B"
Honorable Michael D. Clement,
* * * * * *
**Judge Rosemary Ledet**
* * * * * *
(Court composed of Judge Terri F. Love, Judge Edwin A. Lombard, Judge Rosemary Ledet)

Gladstone N. Jones, III
Bernard E. Boudreaux, Jr.
Kevin E. Huddell
Emma E. Daschbach
John T. Arnold
Peter N. Freiberg
Lindsay Reeves
Christopher W. Swanson
JONES SWANSON HUDDELL & GARRISON, LLC
601 Poydras Street, Suite 2655
New Orleans, LA 70130

S. Jacob Braud
BALLAY, BRAUD & COLON, PLC
8114 Highway 23, Suite 101
Belle Chasse, LA 70037

James R. Swanson
Lance C. McCardle
E. Blair Schilling
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170-4600

John Michael Veron
J. Rock Palermo, III
Turner D. Brumby
VERON BICE PALERMO & WILSON
721 Kirby Street
P.O. Box 2125
Lake Charles, LA 70601

COUNSEL FOR PLAINTIFF/APPELLANT

Cheryl M. Kornick
Kelly B. Becker
Kathryn Z. Gonski
Laura S. Brown
Jaclyn E. Hickman
LISKOW & LEWIS, APLC
701 Poydras Street, Suite 5000
New Orleans, LA 70139-5099

Jamie D. Rhymes
LISKOW & LEWIS, APLC
822 Harding St.
P. O. Box 52008
Lafayette, LA 70505-2008

Richard D. McConnell, Jr.
KEAN MILLER, LLP
400 Convention Street, Suite 700
P.O. Box 3513
Baton Rouge, LA 70802

Michael R. Phillips
Claire E. Juneau
Chynna M. Anderson
Rachel Scarafia
KEAN MILLER, LLP
909 Poydras Street, Suite 3600
New Orleans, LA 70112

Thomas M. Flanagan
Sean P. Brady
Meghan F. Grant

FLANAGAN PARTNERS LLP
201 St. Charles Avenue, Suite 3300
New Orleans, LA 70170

COUNSEL FOR DEFENDANTS/APPELLEES

**AFFIRMED IN PART; REVERSED IN PART; AND
REMANDED; SUPERVISORY WRIT DISMISSED AS MOOT**

**April 21, 2021**

This is a dispute regarding the interpretation of four right-of-way agreements for the dredging of canals and the construction and operation of pipelines (collectively the "ROWs"). The parties to the dispute are the plaintiff—the present property owner,[1] Morgan City Land and Fur Company, LLC ("Landowner")—and the five pipeline defendants—Tennessee Gas Pipeline Company, LLC ("TGP"); Southern Natural Gas Company, LLC ("SNG"); High Point Gas Transmission, LLC ("High Point One"); Cayenne Pipeline, LLC ("Cayenne"); and High Point Gas Gathering, LLC ("High Point Two") (collectively "Pipelines").

In this appeal, Landowner seeks review of the trial court's October 2, 2020 judgment granting in part and denying in part the parties' cross-motions for partial summary judgment.[2] The parties, in their cross-motions, sought a determination of

---

[1] The property at issue is primarily marshland located throughout the east bank of Plaquemines Parish.

[2] From the trial court's October 2, 2020 judgment on the cross-motions, Landowner contemporaneously filed both an appeal and a writ application. This court, on its own motion, consolidated the appeal with the earlier-filed writ. The trial court designated the October 2, 2020 judgment as final for purposes of appeal pursuant to La. C.C.P. art. 1915(B)(1), but provided no reasons for doing so. Based on our review of the record, we find no error in the designation. *See*

Pipelines' obligation to maintain the canals dredged pursuant to the ROWs. Following a hearing, the trial court made the following rulings on the parties' cross-motions. As to Landowner's motion, the trial court granted the motion in part, ruling that the ROWs impose the obligation on Pipelines to maintain the bulkheads and plugs as set forth in the ROWs; but, denied the motion in part, ruling that "there is no express obligation on [Pipelines] to maintain the canals and canal banks." Conversely, as to Pipelines' motion, the trial court granted the motion in part, ruling that the ROWs "do not impose an obligation on [Pipelines] to maintain the canals and canal banks"; but, denied the motion in part as to the obligation on Pipelines to maintain the bulkheads and plugs as set forth in the ROWs.[3]

For the reasons that follow, we affirm the trial court's finding that Pipelines have an obligation as set forth in the ROWs to maintain the bulkheads and plugs, reverse the trial court's finding that Pipelines have no obligation to maintain the canals and canal banks, and remand for further proceedings.[4]

## FACTUAL AND PROCEDURAL BACKGROUND

*R.J. Messinger, Inc. v. Rosenblum*, 04-1664, pp. 13-14 (La. 3/2/05), 894 So.2d 1113, 1122 (to assist the appellate court in its review of designated final judgments, the trial court should give explicit reasons, either oral or written, for its determination that there is no just reason for delay; if no reasons are given but some justification is apparent from the record, the appellate court should make a *de novo* determination of whether the certification was proper and, if after examination of the record the propriety of the certification is not apparent, the court of appeal may request a *per curiam* from the trial judge).

[3] Although the trial court granted Pipelines' request to strike Landowner's supplemental memorandum in support of its partial summary judgment motion, Landowner does not raise any issue regarding the correctness of the trial court's ruling striking its memorandum in support. We, thus, do not address this issue.

[4] Given our ruling on the appeal, we deny the earlier-filed writ, which we consolidated with this appeal, as moot.

Between 1957 and 1968, Landowner's predecessors-in-interest entered into the ROWs with Pipelines' predecessors-in-interest. The ROWs, which crossed various portions of Landowners' property, authorized the dredging of canals and the construction and operation of pipelines. The ROWs, however, were silent as to Pipelines' obligation to maintain the canals and canal banks.[5] To provide a background for analyzing the issue presented on appeal, we outline the relevant terms of each of the ROWs.

*1957 TGP ROW*

In 1957, Landowner granted TGP a "right of way and easement to construct, maintain, operate, alter, repair, change the size of, and remove a pipeline . . . for the transportation of oil, gas, petroleum products, or any other liquids, gases or substances which can be transported through pipe lines" (the "1957 TGP ROW"). The 1957 TGP ROW further provided that "[t]he said right of way and easement granted herein shall not exceed one hundred (100') feet in width." The 1957 TGP ROW further provided:

> It is expressly understood between [Landowner] and [TGP] that . . . [TGP], in the exercise of its rights hereunder shall cut and construct only such navigable canals and waterways as are actually needed for its operation hereunder, and for the purpose of preventing dereliction of [Landowner's] lands, [TGP] shall construct and maintain at [TGP's] expense protection bulkheads or plugs, at all points where canals and waterways to be cut shall intersect with navigable bodies of water already existing.

*1964 TGP ROW*

---

[5] For ease of discussion, we refer simply to Landowner, TGP, and SNG as opposed to their predecessors and successors in interests. Two of the ROWs are between Landowner and TGP; the other two are between Landowner and SNG.

In 1964, Landowner granted TGP a "right of way and easement to construct, maintain, operate, alter, repair, change the size of, and remove a pipeline . . . for the transportation of oil, gas, petroleum products, or any other liquids, gases or substances which can be transported, through pipe lines" (the "1964 TGP ROW"). The 1964 TGP ROW provided that "[t]he said right of way and easement granted herein shall not exceed forty feet in width." The 1964 TGP ROW further provided:

> It is expressly understood between [Landowner] and [TGP] that . . . [TGP], in the exercise of its rights hereunder, shall cut and construct only one canal which shall not exceed forty feet in width, and for the purpose of preventing dereliction of [Landonwer's] lands, [TGP] shall construct and maintain at [TGP's] expense protection bulkheads or plugs, at all points where canals and waterways to be cut shall intersect with navigable bodies of water already existing.

*1958 SNG ROW*

In 1958, Landowner granted SNG a "right of way and easement to construct, maintain, operate, alter, repair, change the size of, and remove one pipe line and one additional pipe line [up to two pipelines] . . . for the transportation of oil, gas, petroleum products or any other liquids, gases or substances which can be transported through pipe lines," and the right "to lay such pipe lines or lines in open ditches or canals not to exceed 40 feet in width" (the "1958 SNG ROW"). The 1958 SNG ROW provided that "[d]uring construction of the initial line contemplated herein, [SNG] shall have a right of way and easement of 100 feet in width; however, upon completion of said construction, the right of way and easement shall be only 40 feet in width." The 1958 SNG ROW further provided:

> [SNG], in the exercise of its rights hereunder, shall cut and construct only such navigable canals and waterways as are actually needed for its operations hereunder, none of which shall exceed 40

feet in width, and for the purpose of preventing dereliction of [Landowner's] land [SNG] shall construct and maintain at [SNG's] expense protection bulkheads or plugs, at all points where canals and waterways to be cut shall intersect with navigable bodies of water already existing, when called upon by [Landowner] to do so.[6]

*1968 SNG ROW*

In 1968, Landowner granted to SNG "a servitude or right-of-way forty (40) feet in width . . . for the purpose of constructing, maintaining, operating, repairing and removing not more than two separate pipelines . . . for the transportation of oil, gas, petroleum products or any other liquids, gas or substances" (the "1968 SNG ROW"). The 1968 SNG ROW provided that the "described forty (40) foot wide right-of-way is located Southeast of, parallel with and contiguous to that certain forty (40) foot wide right-of-way which was granted to [SNG] by [Landowner] by [the 1958 SNG ROW]." The 1968 SNG ROW further provided:

> [SNG] shall take all reasonable steps to prevent use of the ditch or canal dredged on the servitude granted herein by persons other than [SNG's] employees and/or agents. [SNG] shall post signs indicating that the canal or ditch is private, and further shall take all necessary steps to plug the entrance of the canal or ditch from the bays, lakes, and open bodies of water through which the servitude granted herein runs. [SNG] takes cognizance of the fact that in order to effectively prevent unauthorized use of the canal to be dredged by [SNG], plugs must be placed and maintained in the canal dredged within the servitude [granted in the 1958 SNG ROW] as well as in the canal to be dredged within the servitude granted hereby, and [SNG] agrees that [these provisions] shall apply to both of said canals. If [Landowner] is not satisfied with the manner in which such plugs are constructed or maintained, [SNG] shall be given written notice of such dissatisfaction and [SNG] shall take all reasonable steps to rectify any deficiencies.[7]

---

[6] SNG transferred its interest in the 1958 SNG ROW to High Point One in 2012. High Point One, in turn, assigned a partial interest in the 1958 SNG ROW to High Point Two and Cayenne in 2017. Thus, High Point One, High Point Two, and Cayenne are the current grantees under the 1958 SNG ROW.

[7] SNG transferred its interest in the 1968 SNG ROW to High Point One; hence, High Point One is the current grantee of the 1968 SNG ROW.

Landowner filed this suit in August 2018, alleging that Pipelines breached the ROWs by failing to maintain the canals, causing erosion, resulting in the canals widening, and altering the hydrology and ecology of Landowner's property.[8] In its petition, which it amended twice, Landowner averred that Pipelines breached the express terms of the ROWs and "the implied obligations therein pursuant to the suppletive rules regarding servitudes as set forth in the Louisiana Civil Code arts. 697, *et seq.*, by negligently doing or by failing to do, among other things," the following:

- Maintain the canals and their banks to prevent erosion of the surrounding property;

- Install protective bulkheads or plugs;

- Maintain the protective bulkheads or plugs;

- Prevent unauthorized persons from using the canals;

- Protect the servient estate against damage resulting from use of the servitude;

- Not aggravate the condition of the servient estate;

- Prevent the canals from widening;

- Prevent the canal banks from being breached;

- Use only so much of Plaintiff's Property as necessary to conduct operations;

- Act as a reasonably prudent operator to cause the least possible damage; and

- Restore the property.

In June 2019, Landowner filed a motion for partial summary judgment, seeking a determination "that, as a matter of law, Defendants have an ongoing

---

[8] As of the time of the filing of this suit, the ROWs were still in effect, burdening Landowner's property; and Pipelines were still operating the pipelines in the dredged canals.

duty, pursuant to the written [ROWs] and the Civil Code, to act as prudent administrators and maintain the canals and canal banks in a manner that will cause the least possible damage or aggravation to [Landowner's property]." Pipelines filed a cross-motion, seeking a determination that Pipelines have no duty under the ROWs to maintain the width of the canals on Landowner's property or to prevent natural forces from causing erosion on the property. As noted elsewhere in this opinion, the trial court granted in part and denied in part the cross-motions, finding that although Pipelines had an express duty to install and maintain the bulkheads and plugs, Pipelines had no implied duty to maintain the canals and canal banks. This appeal followed.

## DISCUSSION

The sole issue in this appeal is whether the trial court erred in finding that Pipelines have no implied obligation to maintain the canals and canal banks. Before addressing that issue, we first outline the governing principles.

*Summary Judgment Principles*

The governing statutory provision, La. C.C.P. art. 966, provides that a motion for summary judgment shall be granted if, "[a]fter an opportunity for adequate discovery," the "motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). The granting of a partial summary judgment is authorized by La. C.C.P. art. 966(E), which provides that "[a] summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though

7

the granting of the summary judgment does not dispose of the entire case as to that party or parties."

An appellate court applies a *de novo* standard of review in reviewing a trial court's ruling on a summary judgment motion and utilizes the same criteria that the trial court initially employs under La. C.C.P. art. 966. *See Harmonia, LLC v. Felicity Prop. Co., LLC*, 20-0253, 20-0254, p. 6 (La. App. 4 Cir. 11/25/20), ___ So.3d ___, ___, 2020 WL 6937836, *3. Summary judgment is appropriate when the facts are not in dispute; in that context, an appellate court "look[s] solely to the legal question presented by the motion for summary judgment." *Power Mktg. Direct, Inc. v. Foster*, 05-2023, p. 9 (La. 9/6/06), 938 So.2d 662, 669; *see also Arceneaux v. Amstar Corp.*, 15-0588, p. 5 (La. 9/7/16), 200 So.3d 277, 281.

The issue presented here, as Pipelines correctly contend, involves the interpretation of the ROWs, which are contractual agreements. The interpretation of contractual agreements generally is a question of law that may be resolved by summary judgment. *Total Minatome Corp. v. Union Texas Products Corp.*, 33,433, p. 5 (La. App. 2 Cir. 8/23/00), 766 So.2d 685, 689 (observing that "[c]ontract interpretation is a question of law"); *Semco, LLC v. Grand Ltd.*, 16-342, p. 43 (La. App. 5 Cir. 5/31/17), 221 So.3d 1004, 1035, (observing that "[i]nterpretation of a contract and, specifically the issue of whether a contract is ambiguous, is a question of law properly determined at the summary judgment stage"). As the Louisiana Supreme Court has observed, "[t]he determination of whether a contract is clear or ambiguous is a question of law." *Sims v. Mulhearn Funeral Home, Inc.*, 07-0054, p. 9 (La. 5/22/07), 956 So.2d 583, 590. "[W]hen a contract can be construed from the four corners of the instrument without looking to extrinsic

evidence, the question of contractual interpretation is answered as a matter of law." *Id.*, 07-0054, p. 10, 956 So.2d at 590.

"When the analysis calls for interpreting a contract, the Louisiana Civil Code is the starting point." *Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co*., 179 F.3d 169, 175 (5th Cir. 1999); *W&T Offshore, L.L.C. v. Texas Brine Corp*., 18-0950, 18-0956, p. 2 (La. 6/26/19), ___So.3d ___, ___, 2019 WL 2896773, *2 (Weimer, J., dissenting) (observing that the proper starting point in interpreting a right of use agreement is with the words of the Civil Code). Here, two parts of the Civil Code are pertinent—the general rules regarding contract interpretation, codified in La. C.C. arts. 2045 to 2057; and the special rules regarding predial servitudes, codified in La. C.C. arts. 646 to 774.[9]

*General Rules of Contract Interpretation*

The Civil Code sets forth a blue print for contractual interpretation in "Chapter 13 of Title IV, Book III, consisting of articles 2045 through 2057." *Prytania Park Hotel, supra*.; *see also Amend v. McCabe*, 95-0316, p. 7 (La. 12/1/95), 664 So.2d 1183, 1187. "The cardinal rule is set forth in La. Civ. Code art. 2045, which states that the interpretation of a contract is the determination of the common intent of the parties." *Id.* "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. art. 2046.

---

[9] When the parties entered into the ROWs between 1957 and 1968, the provisions of the Civil Code of 1870 were in effect. As the Louisiana Supreme Court has observed, "[i]n 1977 Title IV of Book II of the Civil Code, consisting of articles 646 to 822, was amended and reenacted. Acts 1977, No. 514, § 1. The amended title, effective January 1, 1978, consists of articles 646 to 774." *Ogden v. Bankston*, 398 So.2d 1037, 1040, n. 2 (La. 1981). Because the pertinent predial servitude articles cited in this opinion are substantively the same as those in the Civil Code of 1870, we refer to the revised Civil Code articles.

"Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. C.C. art. 2050. "Doubtful provisions must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La. C.C. art. 2053.

"When the parties intend a contract of general scope but, to eliminate doubt, include a provision that describes a specific situation, interpretation must not restrict the scope of the contract to that situation alone." La. C.C. art. 2052, "When the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law . . . regards as implied in a contract of that kind or necessary for the contract to achieve its purpose." La. C.C. art. 2054. "Not all obligations arising out of contract need be explicitly stated. . . . [E]verything that by equity is considered incidental to the particular contract, or necessary to carry it into effect, is also a part of all agreements." *Nat'l Safe Corp. v. Benedict & Myrick, Inc.*, 371 So.2d 792, 795 (La. 1979).

*Servitude Law*

The Louisiana concept of a servitude is equivalent to the common law concept of an easement. *Rose v. Tenn. Gas Pipeline Co.*, 508 F.3d 773, 776-77 (5th Cir. 2007) (quoting *Quibodeaux v. Andrus*, 04-766, pp. 4-5 (La. App. 3d Cir. 10/10/04), 886 So.2d 1258, 1261).[10] The party that benefits from the predial

---

[10] Louisiana law distinguishes between a personal servitude, which benefits a person, and a predial servitude, which benefits an interest in property. La. C.C. art. 639 (providing that "[t]he personal servitude of right of use confers in favor of a person a specified use of an estate less

servitude—here Pipelines—is the dominant estate; and the party burdened by the servitude—here Landowner—is the servient estate. *See* La. C.C. art. 646 (providing that "[a] predial servitude is a charge on a servient estate for the benefit of a dominant estate" and that "[t]he two estates must belong to different owners").

When a servitude is established by contract, the extent and mode of using the servitude is regulated by the contract. *See Ogden*, 398 So.2d at 1040-41; *Ryan v. S. Natural Gas Co.*, 879 F.2d 162, 164 (5th Cir. 1989) (observing that "[a]ny duty imposed on the servitude owner by article 745 is subject to the provisions of the written servitude agreement between the parties"). Stated otherwise, "property owners have the right to establish whatever servitudes they deem proper . . . limited only by considerations of public order." *Ogden*, 398 So.2d at 1040-41.

The Civil Code "provides a whole host of suppletive rules that govern the relationship of parties to a servitude to the extent that [the parties] . . . do not provide otherwise" by contract. *Rose v. Tennessee Gas Pipeline Co.*, 508 F.3d at

---

than full enjoyment"). In *Rose v. Tennessee Gas Pipeline Co.*, 508 F.3d at 777, n. 13, the federal court observed the following regarding the nature of canal right-of-way servitudes:

> Arguably, there is some question as to whether the instant servitude should be classified as a predial servitude or a personal servitude of right of use. Louisiana Civil Code article 639 states that "[t]he personal servitude of right of use confers in favor of a person a specified use of an estate less than full enjoyment." LA. CIV.CODE ANN . art. 639. Even though rights of way similar to that granted to TGP are frequently characterized as predial servitudes, *see, e.g.*, *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303 (5th Cir. 2002), perhaps the interest in question might be better classified as a personal servitude because it confers a benefit in favor of a juridical person, TGP, rather than an immovable. Either way, though, the interest granted to TGP meets the definition of a servitude under Louisiana law. And, under the circumstances, any distinction is immaterial. The fact that a servitude was created by the 1964 expropriation judgment implicates Louisiana's suppletive law on servitudes, and under Louisiana Civil Code article 645, "[a] right of use is regulated by application of the rules governing usufruct and predial servitudes to the extent that their application is compatible with the rules governing a right of use servitude." LA. CIV.CODE ANN. art. 645.

11

778.[11] In *Terrebonne Par. Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d

303, 315 (5th Cir. 2002), the federal appellate court summarized the following the

pertinent suppletive rules as follows:

- "[A]mbiguity in a servitude agreement must be construed in favor of the servient estate." *Id.*, 290 F.3d at 315 (citing La. C.C. art. 730 (providing that "[d]oubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate"));

- "[T]he dominant estate owner—here, each defendant [pipeline]—must not 'aggravate' the condition of the servient estate." *Id.* (citing La. C.C. arts. 743 and 745);[12]

- Paraphrasing former Professor A.N. Yiannopoulos, "the duty not to aggravate the condition of the servient estate, 'correlative of the real right of servitude, is not grounded on negligence'; and, absent an express contractual exoneration for marsh erosion damages, 'to the extent that the damage to the servient estate was caused by abuse of right, the damage should be compensable.'" *Id.*, 290 F.3d at 316 (internal citations omitted); and

---

[11] A suppletive rule is a gap filler; "[s]uppletive provisions only 'clutch in' if the contract fails adequately to cover a given issue." *Gen. Elec. Capital Corp. v. Se. Health Care, Inc.*, 950 F.2d 944, 951 (5th Cir. 1991). Explaining the difference between an "imperative" law and a "suppletive" law, the Louisiana Supreme Court, in *E. L. Burns Co. v. Cashio*, 302 So.2d 297, 300 (La. 1974) (internal footnotes omitted), observed:

> Statutory rules may be either imperative or suppletive. Rooted in public policy considerations, an imperative rule is applied without regard to the intention of the individuals concerned. A prohibitory law . . . is one that is cast in the imperative form, but exhibits a negative, rather than positive, command. A suppletive rule, on the other hand, applies only if those affected by it have not excluded its application. Thus, distinction between imperative and suppletive rules determines whether private individuals can set aside rules established by the legislature and regulate their legal relations by private agreement. If an agreement contravenes an imperative rule, it is absolutely null.

[12] La. C.C. article 743 provides that "[r]ights that are necessary for the use of a servitude acquired at the time of the servitude is established. They are to be exercised in a way least convenient for the servient estate." La. C.C. article 745 provides that the owner of a dominant estate has the obligation of "causing the least possible damage" to the servient estate. "Whether a particular use constitutes an aggravation of the servient estate is a question of fact, determined in light of the circumstances of each case. Courts take into account the situation of the estates, the needs of the dominant estate, and the prejudice, if any, sustained by the owner of the servient estate." Ronald J. Scalise Jr., 4 LA. CIV. L. TREATISE, PREDIAL SERVITUDES § 7:9 (4th ed. 2020); *Terrebonne Par. Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 317, n. 40 (observing that "[t]his is a fact-intensive inquiry best left to the district court or jury").

12

- "[T]he duty not to aggravate the servient estate is a continuing duty." *Id.*, 290 F.3d at 316.

It is well settled that one holding a servitude on another's land is bound to use that servitude in such a manner as to not unreasonably injure the rights of the owner of the servient estate. Thus, if the owner of the servitude uses it in a negligent, unauthorized, or unreasonable manner, the owner of the servient estate may sue for damages. *Stephens v. Int'l Paper Co.*, 542 So.2d 35, 39 (La. App. 2d Cir. 1989). "[T]he owner of the dominant estate . . . must exercise his 'specified use' without exceeding the boundaries of that use in a manner damaging the concomitant use of the servient estate"; and [t]he owner of the dominant estate may not make use of the servitude that aggravates the condition of the servient estate." *Petchak v. Bossier Par. Police Jury*, 45,705, p. 23 (La. App. 2 Cir. 11/24/10), 55 So.3d 840, 852 (internal quotations and citations omitted). With the above principles in mind, we turn to the issue presented here.

*Issue Presented*

It is undisputed that the ROWs do not impose an express obligation on Pipelines to maintain the canals and canal banks. The narrow issue presented here is whether there is an implied obligation to do so under Louisiana's suppletive law on servitudes. According to Landowner, this court decided this issue in a recent, unpublished writ decision, *Vintage Assets, Inc. v. Tennessee Gas Pipeline Co., L.L.C.*, 20-0065 (La. App. 4 Cir. 3/19/20) (*unpub.*) ("*Vintage Assets* Writ 1").[13]

In order to understand the *Vintage Assets* writ decisions, it is necessary to outline the complex procedural history of that case, which began in federal court.

---

[13] As discussed elsewhere in this opinion, there were two writ applications filed and two writ decisions; the other writ decision was *Vintage Assets, Inc. v. Tennessee Gas Pipeline Co., L.L.C.*, 20-0066 (La. App. 4 Cir. 3/19/20) (*unpub.*) ("*Vintage Assets* Writ 2").

As in this case, the *Vintage Assets* case was a suit by plaintiff-landowners against defendant-pipelines regarding canal right-of-way agreements. Plaintiff-landowners alleged essentially the same theories of recovery as in this case, including breach of a contractual duty to maintain the canals and canal banks. As in this case, the parties filed cross-motions for summary judgment seeking a determination of whether the pipelines had a duty to maintain the canals and canal banks.

In addressing the cross-motions, the federal district court divided the eight right-of-way contracts at issue in *Vintage Assets* into two categories—six that contained a dimension-limiting provision, stating that the canals may not exceed a certain width (the "Not-to-Exceed Contracts"), and two that did not contain any dimension-limiting provision (the "No-Measurement Contracts"). Addressing the Not-to-Exceed Contracts, the federal district court found them ambiguous as to defendants-pipelines' duty to maintain the canals, observing that "[e]ach allows the canals to be left 'open' but contemplate a maximum width of the canals and rights-of-way." *Vintage Assets, Inc. v. Tennessee Gas Pipeline Co., L.L.C.,* CV 16-713, 2017 WL 3601215, at *6 (E.D. La. Aug. 22, 2017) ("*Vintage Assets* Federal District Court Case"). Rejecting defendants-pipelines' argument that the ambiguity should be resolved by using parol evidence, the federal district court instead followed *Columbia Gulf*, an earlier-decided federal case, and looked to Louisiana suppletive law on servitudes, observing:

> [T]his Court will follow the instruction of *Columbia Gulf* and look to suppletive law. While the court in *Columbia Gulf* held that suppletive law applied to fill in the gaps of the servitude agreement, it stopped just short of holding that the suppletive rules espouse a duty to maintain the canals from widening. It merely held that if such a duty exists, it is [a] continuous one and therefore the district court was improper in holding that the plaintiff's claims had prescribed. Indeed,

the question of "whether the suppletive law of Louisiana might impose such a duty remains to be resolved."

It is well settled, though, that Louisiana's suppletive law on servitudes imposes "a continuing duty to refrain from injuring or aggravating a servient estate." The question of first impression before this Court then becomes whether the duty to refrain from aggravating the servient estate encompasses a duty to maintain canals and canal banks from eroding the servient estate. This Court finds that it is self-evident that allowing a canal to widen such that it encroaches on the servient estate or erodes the servient estate into open water constitutes aggravation. Accordingly, pursuant to suppletive law Defendants have a duty to maintain the canals and canal banks to prevent erosion, and therefore aggravation, of the servient estate.

*Vintage Assets* Federal District Court Case, 2017 WL 3601215, at *7 (internal footnotes omitted).[14] On appeal, however, the federal district court's decision was vacated based on a finding of lack of diversity jurisdiction; and the case was remanded by the district court to state court. *Vintage Assets, Inc. v. Tennessee Gas Pipeline Co., L.L.C.*, 18-30688, 2018 WL 6264375 (5th Cir. Oct. 2, 2018) (*unpub.*) (stating that "the district court is ORDERED to remand the case to the 25th

---

[14] Because all four of the ROWs in this case contain measurement provisions, the discussion of the No-Measurement Contracts in *Vintage Assets* is not relevant here. Nonetheless, regarding the No-Measurement Contracts, the federal district court in *Vintage Assets* observed:

The remaining servitude agreements contain no "not to exceed" measurement and merely grant Defendants the right to lay pipelines in an open canal "which may be filled in or left open at the option of Grantee." That said, they do not contain the type of internal confusion present in the other contracts. Here, the agreements unambiguously give Defendants the right to leave the canals open, and therefore they are absolved of any obligation to backfill or . . . dam those canals. This Court interprets this, as other Courts have, to evince an understanding between the parties that the Defendants were not obligated to take any action to maintain the canals. "[T]he damage to Plaintiffs' marshland results from the continuous flow of water through the canal due to its having 'remained open' .... However, [Defendant] was specifically granted the right to keep the canal open through the language of the servitude agreement cited above." Accordingly, Defendants do not have a duty to maintain the canals under the No Measurement Contracts. . . .

*Vintage Assets* Federal District Court Case, 2017 WL 3601215, at *7 (internal footnotes omitted).

Judicial District Court of Plaquemines, Louisiana for lack of subject-matter jurisdiction").

On remand to state court, the parties again filed the same cross-motions for summary judgment on the issue of the duty to maintain the canals and canal banks. Like the federal district court, the state trial court denied defendants-pipelines' motions for summary judgment as to the Not-to-Exceed Contracts.[15] Defendants-pipelines then filed a writ application to this court. This court denied defendants-pipelines' writ, observing:

> Each of the six right of way agreements provided that the canals were not to exceed a certain width. Such language sufficiently provides that the canals are not to exceed the widths stated. Given the obligations established by the Louisiana Civil Code on the dominant estate owners, the servitudes are properly interpreted to impose a duty to maintain the canals within the widths provided in the servitudes. As

---

[15] The state trial court also granted the defendants-pipelines' summary judgment motion as to the No-Measurement Contracts. This court granted the plaintiff-landowners' writ and reversed the trial court's ruling as to the No-Measurement Contracts, observing:

> In this instant matter, it is undisputed that the two right-of-way servitude agreements did not establish "not to exceed" width limitations and granted Respondents a right to leave the canals open. As such, the servitude agreements did not expressly establish Respondents' duty to maintain the canals and canal banks. However, when predial servitudes are not regulated by a contract, these servitudes are governed by Louisiana Civil Code articles on predial servitudes which establish a duty on dominant estates to use their servitudes in a manner that does not injure or aggravate servient estates. La. C.C. art. 697; *See also Rose*, 508 F.3d at 778. Thus, the issue of whether Respondents' use of the servitudes establish a duty to maintain the canals and canal banks is a genuine issue of material fact.

> Moreover, the record does not reflect that Respondents presented any evidence showing that maintenance of the canals and canal banks would not assist in causing the least injury or aggravation to Relators' property. To the contrary, Relators presented deposition testimony of Thomas Hutchins, a representative of Respondents, who testified the creation of canals and canal banks have an environmental impact on Louisiana's marshland, and measures could have been taken to limit such impact. Cyrus Harper, another one of Respondents'representatives, testified that, once the gas pipelines were laid, maintenance of the pipelines were not conducted. Thus, in light of the deposition testimony and the lack of evidence presented by Respondents, we find the trial court erred in granting, in part, Respondents' joint motion for partial summary judgment.

*Vintage Assets* Writ 2.

16

such, the servitudes establish a duty on the Relators to take actions necessary to prevent the excess widening of the canals. The Relators, thus, are not entitled to summary judgment that they do not have such duties under the six right of way agreements.

*Vintage Assets* Writ 1.

A commentator has likewise noted that a pipeline right-of-way containing a dimension-limiting provision includes an implied duty to maintain the canal at such contractually stated dimension, observing:

> Private landowners are extremely well situated to recover under a breach of contract theory in instances where a defendant has dredged a canal that has widened beyond the width contemplated by an original servitude agreement. The central question in such claims is whether contracts allowing oil companies to dredge canals on private property imply a duty to maintain such canals within the bounds of the original contracts. Louisiana law is clear on the issue—the duty to maintain canals is implied by such contracts for land use.

Jacob J. Pritt, *Litigating Land Loss: An Analysis of Three Attempts to Hold Oil Companies Accountable for Coastal Erosion*, 93 Tul. L.Rev. 387, 408 (2018) (citing *Vintage Assets*, 2017 WL 3601215, \*7)(the *Vintage Assets* Federal District Court Case).

On appeal, Landowner contends that *Vintage Assets* is dispositive of this case.[16] We agree. Here, as in *Vintage Assets*, each of the four ROWs include a

---

[16] Pipelines counter that the *Vintage Assets* case is distinguishable, involving different right-of-way agreements and different circumstances. Pipelines also cite *Terrebonne Par. Sch. Bd. v. Castex Energy, Inc.,* 04-0968 (La. 1/19/05), 893 So.2d 789, as establishing it is improper to impose a duty to maintain here. But, Pipelines' reliance is misplaced. In *Castex*, the Supreme Court considered whether article 122 of the Mineral Code (La. R.S. 31:122), "which obligates a mineral lessee to act as a reasonably prudent operator, compels the lessee to restore the surface of the leased land to its pre-lease condition, where the lease terms do not so require and there is no evidence that the lessee excessively or unreasonably exercised its rights under the lease." *Castex*, 04-0968, p. 1, 893 So.2d at 791. The Supreme Court held that "where the mineral lease expressly grants the lessee the right to alter the surface in the manner it did, and is silent regarding restoration, article 122 only imposes a duty to restore the surface to its original condition where there is evidence of unreasonable or excessive use." *Castex*, 04-0968, p. 2, 893 So.2d at 792. The Supreme Court discussed the obligations of the lessee under the Mineral Code and the mineral and oil lease entered into between the parties. The lease provided for the dredging of canals, the drilling for oil and minerals and the placement of pipelines. The Supreme

dimension-limiting provision (the "Measurement Provisions").[17] Thus, as in

*Vintage Assets*, the suppletive articles of the Civil Code impose an implied duty on

Pipelines not to aggravate the servient estate.

Arguing to the contrary, Pipelines point to the provisions in the ROWs

requiring Pipelines to install and maintain bulkheads and plugs under certain

circumstances to prevent dereliction, which means erosion (the "Plugs

Provisions").[18] Pipelines contend that the Plugs Provisions in the ROWS expressly

---

Court noted what constitutes the wear and tear on the land when canals are dredged, drilling occurs and the pipelines are placed on coastal wetlands. But, the Supreme Court did not state that coastal erosion is a necessary consequence of public purpose project or that canal widening and erosion is a necessary consequence of the construction of the canals and placement of the pipelines. These issues were not before the Supreme Court in *Castex*.

[17] The measurement provisions in each of the ROWS are as follows:

- 1957 TGP ROW: "[t]he said right of way and easement granted herein shall not exceed one hundred (100') feet in width";

- 1964 TGP ROW: "[t]he said right of way and easement granted herein shall not exceed forty feet in width";

- 1958 SNG ROW: "[SNG] shall cut and construct only such navigable canals and waterways as are actually needed for its operations hereunder, none of which shall exceed 40 feet in width"; and

- 1968 SNG ROW: "a servitude or right-of-way forty (40) feet in width."

[18] The Plug Provisions in each of the ROWs are as follows:

- 1957 TGP ROW: "for the purpose of preventing dereliction of [Landowner's] lands, [TGP] shall construct and maintain at [TGP's] expense protection bulkheads or plugs";

- 1964 TGP ROW: "for the purpose of preventing dereliction of [Landowner's] lands, [TGP] shall construct and maintain at [TGP's] expense protection bulkheads or plugs";

- 1958 SNG ROW: "for the purpose of preventing dereliction of [Landowner's] land [SNG] shall construct and maintain at [SNG's] expense protection bulkheads or plugs, at all points where canals and waterways to be cut shall intersect with navigable bodies of water already existing, when called upon by [Landowner] to do so"; and

18

address the issue of maintenance with respect to prevention of erosion of the canal banks. Given the Plug Provisions in the ROWs, Pipelines contend that the trial court correctly found it is improper to resort to the suppletive laws on servitude. We disagree. We find, at best, the Plugs Provisions create an ambiguity in the ROWs, requiring application of the suppletive articles.

Although we find that application of the suppletive articles imposes on Pipelines a duty not to aggravate Landowner's servient estate, the question of whether any erosion beyond the limits set forth in the Measurement Provisions constitutes an aggravation of Landowner's servient estate is an inherently factual question inappropriate for summary judgment at this juncture. Accordingly, we reverse the trial court's judgment to the extent it holds that Pipelines have no implied obligation to maintain the canals and canal banks.

## DECREE

For the foregoing reasons, the trial court's finding on the parties' cross-motions for summary judgment that Pipelines have an obligation to maintain the plugs and bulkheads as set forth in the ROWs is affirmed; the trial court's finding

- 1968 SNG ROW: "[SNG] further shall take all necessary steps to plug the entrance of the canal or ditch from the bays, lakes, and open bodies of water through which the servitude granted herein runs. [SNG] takes cognizance of the fact that in order to effectively prevent unauthorized use of the canal to be dredged by [SNG], plugs must be placed and maintained in the canal dredged within the servitude [granted in the 1958 ROW Agreement] as well as in the canal to be dredged within the servitude granted hereby. If [Landowner] is not satisfied with the manner in which such plugs are constructed or maintained, [SNG] shall be given written notice of such dissatisfaction and [SNG] shall take all reasonable steps to rectify any deficiencies."

Landowner explains that two of the ROWs—the 1964 TGP ROW and the 1958 SNG ROW—expressly limit the canal width to forty feet; the remaining two ROWs—the 1957 TGP ROW and the 1968 SNG ROW—contain width specifications, not as to the canals but as to the entire servitude afforded.

on the parties' cross-motions for summary judgment that Pipelines have no obligation to maintain the canals and canal banks is reversed; and this matter is remanded for further proceedings. Given our ruling on the appeal, Landowner's earlier-filed writ, which we consolidated with this appeal, is denied as moot.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED; SUPERVISORY WRIT DISMISSED AS MOOT**